IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joshua Taylor (#2016-1022104) | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 CV 1078 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Thomas Dart, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joshua Taylor is an inmate currently incarcerated at Cook County Jail. In Plaintiff's Fifth Amended Complaint (the "FAC"), he brings claims against numerous Defendants, alleging they violated his constitutional rights. For the reasons stated below, Defendants' motion to dismiss the FAC is granted in part and denied in part.

I. **Background**

Currently, Plaintiff Joshua Taylor remains incarcerated at Cook County Jail. [45] ¶ 1. He brings this suit against numerous Defendants alleging that their inadequate medical care deprived him of his constitutional rights. *Id*. ¶¶ 66–73. Defendant Cermak Health Systems of Cook County constitutes a subsidiary of Cook County Health & Hospitals System. *Id*. ¶ 9. It provides health care to Cook County Jail inmates. *Id*. Defendants Pam Brown, D. Wilson, Nurse Pretty, Nurse Wright, Nurse Miles, Susan Shebel, Nurse Simon, Director Miller, and S. Davis are all employees of Defendant Cermak Health Systems. *Id*. ¶¶ 2–8, 10–11. Plaintiff also

1

identifies as Defendants Jane Does 1–8, who are employees of Defendant Cermak Health Systems. *Id*. ¶ 12. Finally, Defendant Thomas J. Dart is the Sheriff of Cook County; and Plaintiff names him as a nominal defendant. *Id*. ¶ 13.

1. Procedural History

As can be common when prisoners file *pro se* claims, this motion comes before this Court with a lengthy procedural background. Plaintiff filed this action on February 6, 2018. [1]. At that time, Plaintiff simultaneously filed a motion for attorney representation. [4]. In his original complaint, Plaintiff claimed that various defendants violated his constitutional rights by acting with deliberate indifference on various occasions to his medical and dental needs. [1]. This Court dismissed that complaint without prejudice, along with several other amended complaints, and ordered Plaintiff "to submit an amended complaint limited to a single, core claim" instead of several, seemingly misjoined claims and Defendants. [5]; [8]. Eventually this Court granted Plaintiff's motion for attorney representation and recruited counsel. [13]. After grappling with the joinder issue, the FAC is now before this Court on Defendants' motion to dismiss. [48].

2. Plaintiff's Allegations

Plaintiff alleges he suffers from a serious heart condition (atrial fibrillation) that causes an irregular heartbeat, which in turn may lead to complications if not correctly monitored and treated. [45] ¶ 16. Plaintiff also alleges that he advised Cook County Jail and Cermak Health Systems' employees of his condition, its severity, and Plaintiff's necessary treatment upon entering Cook County Jail. *Id*. ¶ 18. But despite

2

being aware of his condition, on a number of occasions, various Defendants did not provide Plaintiff appropriate medical care.

First, he suffered a severely swollen and painful leg after Defendants denied Plaintiff his blood clot medicine. *Id.* ¶ 21. Consequently, as his leg swelled, Plaintiff grew concerned that he had a blood clot, which is a possible complication of atrial fibrillation. *Id.* Plaintiff alleges that when he sought care, Defendant Nurse Pretty told Plaintiff he would "not die right away" and delayed treatment for hours. *Id.* ¶¶ 22–27. During the delay, Plaintiff's leg worsened; and he was ultimately sent to the hospital for treatment. *Id.* ¶ 27.

Second, Plaintiff alleges that he suffered from severe tooth pain. *Id.* ¶ 31. After reporting his pain multiple times, one of the nurses indicated in the Cook County Jail's computer system that Plaintiff's dental needs were urgent. *Id.* ¶ 32. Yet a dentist did not see Plaintiff for four to six months after the nurse marked his needs as urgent. *Id.* ¶ 33. Once his dental visit occurred, the dentist was forced to extract three teeth. *Id.* ¶ 34.

Third, Plaintiff alleges that he complained of suffering flu-like symptoms. *Id.* ¶ 35. Defendant Nurse Iman, however, sent Plaintiff away from the infirmary without treatment. *Id.* ¶¶ 36–37. Another nurse intervened though and sent Plaintiff to the hospital. *Id.*

Fourth, Plaintiff alleges that a Cermak Health Services doctor transferred him from the Residential Treatment Unit, which houses inmates with chronic illnesses or serious medical conditions, such as atrial fibrillation, to unit not suited for such

inmates. *Id.* ¶ 41. Plaintiff further alleges that the same unidentified doctor discontinued Plaintiff's medications, including his atrial fibrillation medication. *Id.* ¶ 42.

Fifth, Plaintiff alleges that he suffered from various instances of pain and other symptoms between November 20, 2017 and January 23, 2018. *Id.* ¶¶ 45–48. Plaintiff alleges that several defendants failed to adequately treat his pain and failed to provide a minimal standard of care for a patient known to have atrial fibrillation. *Id.*

Sixth, Plaintiff alleges that he was given the wrong medication after the extraction of his teeth, which mixed with his normal heart medications. *Id.* ¶¶ 52, 56. When Nurse Miles realized she gave Plaintiff the wrong medication, she told Plaintiff "you'll live" and failed to take any corrective measures. *Id.* ¶¶ 56–57. Shortly after taking the incorrect medicine, Plaintiff developed severe side effects and was taken to Cermak, where a doctor advised him that the drug mixture Nurse Miles gave him is known to produce a dangerous drug interaction. *Id.* ¶¶ 58–63.

Finally, Plaintiff alleges that on eight other occasions, he was either given the wrong medication or no medication at all. *Id.* ¶¶ 64–65.

Based upon these allegations, Plaintiff alleges one claim asserting that Defendants violated his constitutional rights by acting with deliberate indifference to his atrial fibrillation by engaging in activities that could aggravate his condition. *Id.* ¶¶ 66–73 ("Defendants' intentional failure to provide adequate medical care puts Taylor at constant risk of complications from atrial fibrillation.").

## II. <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements will not suffice. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

## III. <u>Discussion</u>

Defendants argue: (1) the FAC still suffers from the same misjoinder problem as its predecessors because it joins unrelated claims against multiple unrelated defendants and (2) that Plaintiff failed to allege sufficient facts to support a claim for deliberate indifference. [48] at 4. This Court will address these arguments in turn.

1. **Misjoinder**

Plaintiffs may join multiple defendants in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Defendants argue that Plaintiff improperly joined multiple unrelated claims against multiple unrelated Defendants, requiring dismissal of the complaint. [48] at 4–6. But Defendants are mistaken on two counts.

First, although misjoinder is a serious issue, particularly for prisoner claims, *George v. Smith*, 507 F.3d 605, 607–08 (7th Cir. 2007), dismissal of the complaint is a not a remedy for misjoinder, Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1684 (3d ed. 2019). Instead, courts may remedy misjoinder by severing the misjoined defendants or claims. *Id.* Thus, this Court denies Defendants' request to dismiss the FAC due to misjoinder.

Secondly, based upon the current record, this Court remains unpersuaded that a misjoinder problem exists. Under the Federal Rules, when a question of law is common to all defendants and it arises out of the same transaction or series of transactions, a plaintiff may properly join the parties. Fed. R. Civ. P. 20(a)(2). In this case, the common question of law is whether Defendants violated Plaintiff's Fourteenth Amendment rights through their alleged deliberate indifferent to his serious medical condition. [45] ¶¶ 66–73.

As to the second inquiry, Defendants argue that Plaintiff's experiences: a swollen leg, lack of dental visits, flu-like symptoms, transfers from his unit, and generalized pain, are separate and distinct occurrences that do not arise from the same transaction, occurrence, or series of transactions or occurrences. [48] at 4–6. Defendants further argue that the allegations do not contain facts common to all Defendants because each of the alleged incidents involved different Defendants. *Id*. at 4–5.

This factual question, however, turns upon whether the FAC present a series of individual events or a single event connected by the effects of Defendants' various actions on Plaintiff's underlying heart condition (and an alleged drug interaction). Unlike Plaintiff's previous complaints, the FAC states a single claim based upon an overarching grievance – at least at this early stage of the proceedings. *Compare, e.g.*, [6] *with* [45] ¶¶ 66–73. Plaintiff does not claim that each incident in the complaint amounts to a distinct violation of his rights under the Fourteenth Amendment but rather that each incident provides supporting facts illustrating Defendants' deliberate indifference towards his heart condition. [55] at 2–4; [45] ¶ 70–72 ("Defendants' intentional failure to provide adequate medical attention puts Taylor at constant risk of complications from atrial fibrillation."). This Court finds, therefore, joinder appropriate even if every Defendant did not engage in each incident in the overall course of conduct.[1] With that in mind, this Court will now turn to the merits of Plaintiff's claim.

---

[1] Furthermore, while it remains true that some of the facts offered to support his claim are irrelevant, that does not answer the question of whether Plaintiff alleged sufficient facts to state a claim. For

7

## 2. Deliberate Indifference

Plaintiff alleges that Defendants denied him his Fourteenth Amendment rights due to their deliberate indifference to his heart condition. [45] ¶¶ 66–73. As an initial matter, the Seventh Circuit has established that the denial of medical care constitutes a denial of an inmate's constitutional rights. *Smith v. Dart*, 803 F.3d 304, 315 (7th Cir. 2015) (Posner, J. concurring and dissenting) (citing sources).

As such, this Court must next consider Plaintiff's allegations and determine whether he has sufficiently alleged that Defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 101–04 (1976). To state a claim for deliberate indifference under the Fourteenth Amendment, courts use the same legal standard as that established for claims under the Eight Amendment.[2] *Board v. Farnham*, 394 F.3d 469, 477–78 (7th Cir. 2005) (citing *Henderson v. Sheahan,* 196 F.3d 839, 845 n. 2 (7th Cir.1999)). Accordingly, Plaintiff must present facts showing that: "(1) his condition was 'objectively serious'; and that (2) the defendants were deliberately indifferent to that condition." *Id*. at 479.

Defendants do not contest that Plaintiff's heart condition is objectively serious. [48] at 6–12. Instead, they focus upon whether Plaintiff sufficiently alleged the

---

example, Plaintiff alleges that for months Defendants denied him a dental visit. [45] ¶¶ 31–34. But Plaintiff does not link this denial to his atrial fibrillation, *id*, thus, these allegations do not support his Fourteenth Amendment claim. Yet even if the dental visit allegations do not support his claim, this Court must still consider whether the rest of the allegations in the FAC state a claim.

[2] In order to be held liable, Defendants must also be acting under the color of state law. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). However, Defendants do not dispute that they acted under the color of state law. *See* [48].

8

various Defendants acted with deliberate indifference. *Id*. "Deliberate indifference is a subjective standard, requiring that an official 'know of and disregard an excessive risk to inmate health.'" *Bond v. Aguinaldo*, 265 F. Supp. 2d 926, 929 (N.D. Ill. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)) (internal punctuation omitted). In other words, the requisite mental state lies "somewhere between the culpability poles of negligence and purpose" and is thus "properly equated with reckless disregard." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). With the exception of Defendant Dart, this Court finds that Plaintiff plausibly alleged that the individual Defendants knew of Plaintiff's medical condition. Plaintiff alleges that he "advised Cook County Jail and employees of Cermak Health Systems of his condition, its severity, and his necessary treatment upon entering Cook County Jail," [45] ¶ 18. This Court may, therefore, reasonably infer that Defendants (all of which are Cermak employees, except for Defendant Dart) had "actual knowledge" of Plaintiff's serious medical condition. Indeed, Defendants do not argue otherwise. *See* [48] at 7–12. Thus, the relevant inquiry for each Defendant is whether that Defendant recklessly disregarded Plaintiff's medical condition.

    *i.   Supervisor Defendants*

       a.   <u>Sheriff Tom Dart</u>

Plaintiff asserts claims against Cook County Sheriff Tom Dart. [45] ¶ 13. Plaintiff does not assert any facts against Sheriff Dart, but merely includes him as "a nominal defendant." *Id*. Defendants argue that Plaintiff cannot proceed with a supervisor claim against Sheriff Dart because courts cannot hold supervisors

9

vicariously liable for constitutional deprivations under § 1983. [48] at 7; *see also Monell v. N.Y.C. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Defendants' argument is well-founded.

Plaintiff fails to specify whether he seeks to hold Sheriff Dart liable in his individual or official capacity. [45] ¶ 13. To hold Defendant Sheriff Dart liable in his individual capacity, Plaintiff must allege not just that Sheriff Dart was aware of his subordinate's misconduct but also that he wanted the harmful conduct to occur or disregarded the likelihood that Defendants would harm Plaintiff. *Olive v. Wexford Corp.*, 494 Fed. Appx. 671, 673 (7th Cir. 2012) (affirming the district court's dismissal of the head of the prison medical system for failure to allege facts supporting his liability); *Summers v. Sheahan*, 883 F. Supp. 1163, 1171 (N.D. Ill. 1995) (finding the plaintiff had failed to allege facts that would allow the court to "infer that defendants knew of and disregarded an excessive risk to inmate health and safety"). But Plaintiff does not allege any facts regarding Sheriff Dart's conduct or knowledge.

Relatedly, Plaintiff fails to allege that Defendants engaged in any conduct based upon a governmental policy or custom with which to hold Sheriff Dart liable in his official capacity. *Solivan v. Dart*, 897 F. Supp. 2d 694, 705–06 (N.D. Ill. 2012). Thus, this Court grants Defendants' motion to dismiss the claims against Defendant Sheriff Dart.

      b.    <u>Cermak Health Services</u>

Turning next to Defendant Cermak Health Services, although Plaintiff alleges several disquieting actions taken by Defendant Cermak Health Services' employees,

[45] ¶¶ 16–65, he does not allege Cermak itself took direct actions against him nor that it maintained a policy or custom that could confer liability. Therefore, Plaintiff's claims against Cermak Health Services must be dismissed because he "has not alleged any facts to show that it is directly, rather than vicariously, liable." *Forster v. Elyea*, 496 F. Supp. 2d 951, 954 (N.D. Ill. 2007) (dismissing claims against a prison health services provider). For this reason, this Court grants Defendants' motion to dismiss Plaintiff's claims against Defendant Cermak Health Services.

ii. *Defendant Nurse Pretty*

Plaintiff also asserts claims against Defendant Nurse Pretty. [45] ¶ 4. Plaintiff alleges Cermak inappropriately took him off his medication that prevented blood clots, which are a risk of atrial fibrillation. *Id.* ¶ 21. After he was taken off his medication, Plaintiff's leg began to severely swell, and he worried he had a blood clot. *Id.* ¶¶ 20–21. As it relates to Defendant Nurse Pretty, Plaintiff alleges he sought her help as his leg continued to swell and become increasingly painful. *Id.* ¶¶ 22–23. But when he sought help, Nurse Pretty told him he would "not die right away" and waited over an hour to examine him. *Id.* ¶ 22. Plaintiff further alleges that his leg continued to swell for hours and became increasingly painful until he was eventually taken to John H. Stroger, Jr. Hospital. *Id.* ¶¶ 26–28. While at the hospital, the medical staff drained fluid from his leg and monitored his heart overnight. *Id.* ¶¶ 26–28. Taking Plaintiff's allegations as true, Plaintiff sufficiently alleges that Nurse Pretty lacked the requisite concern for Plaintiff's "welfare in the face of serious risks." *Cirilla v. Kankakee Cty. Jail*, 438 F. Supp. 2d 937, 946 (C.D. Ill. 2006) (quoting *McGill v.*

*Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991)); *Perez*, 792 F.3d at 777 (a defendant acts with deliberate indifference when he or she "delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering"). For this reason, this Court denies Defendants' motion to dismiss the claims against Nurse Pretty.

   iii.   *Defendant Nurse Iman*

Plaintiff alleges that Nurse Iman failed to promptly treat his flu-like symptoms, prolonging his suffering. [45] ¶¶ 35–38. Yet Plaintiff does not establish any relationship between these symptoms and his heart condition. *Id*.

Plaintiff, however, also alleges that on another occasion, Nurse Iman was deliberately indifferent. He alleges that when he complained of pain, Nurse Iman only checked his vitals, and "failed to treat the other symptoms of which he complained and about which he filed a grievance." *Id*. ¶ 47. But as before, Plaintiff does not provide any factual allegations alleging a relationship between his pain and his heart condition. Moreover, Nurse Iman's alleged conduct remains not severe enough to demonstrate that Nurse Iman acted with reckless disregard. *Perez*, 792 F.3d at 777. This Court, thus, grants Defendants' motion to dismiss Plaintiff's claims against Nurse Iman.

   iv.   *Defendant Nurse Miles*

Plaintiff requires daily medication to treat his atrial fibrillation. *Id*. ¶ 51. On November 13, 2017, Plaintiff alleges he underwent dental work. [45] 51–65. Later that same day, he received both his heart medication and a new pill, ostensibly related to his dental work. *Id*. ¶¶ 52–54. But after taking the pills and speaking to

Nurse Miles, Plaintiff learned that Nurse Miles accidentally gave him a pill meant for another patient. *Id.* ¶¶ 55–56. Instead of helping him, Nurse Miles simply stated: "You'll live" and asked him to leave. *Id.* ¶ 56. Shortly after taking the medications, he began to feel hot and "woozy." *Id.* ¶¶ 58–60. He was eventually transported to Cermak where he had "dangerously high vital signs," and a doctor told him that the drug mixture he ingested is known to cause a dangerous reaction. *Id.* ¶¶ 62–63. Plaintiff alleges that Nurse Miles displayed deliberate indifference by giving him a harmful drug mixture and remaining unconcerned with the potential harm the drug mixture might cause him. [45] ¶¶ 51–65.

Assuming Plaintiff's allegations are true, he sufficiently alleges that Nurse Miles was deliberately indifferent "approaching total unconcern" for his "welfare in the face of serious risks." *Solivan*, 897 F. Supp. 2d at 704. This Court, thus, denies Defendants' motion to dismiss the claims against Nurse Miles.

    *v.    The Remaining Defendants*

Plaintiff's claims against the other Defendants remain insufficient and must be dismissed. For these Defendants, Plaintiff provides scant factual allegations, which cannot support an inference that they recklessly disregarded any health risk to Plaintiff. For example, Plaintiff only mentions Defendant Pam Brown once, alleging that, based upon information and belief, she was "involved in" at least one incident where Plaintiff was either denied his medication or given the wrong medication. [45] ¶ 65. Similarly, Plaintiff only identifies Defendant Director Miller as a "natural person and employee of Cermak Health Services" and otherwise

13

Director Miller does not reappear in the FAC. *Id*. ¶ 10. While Plaintiff does provide some factual allegations for other Defendants—for example, that Plaintiff filed grievance reports against Defendant D. Wilson and Defendant Susan Shebel, *id*. ¶¶ 45, 65—Plaintiff does not provide sufficient factual allegations for this Court to infer these Defendants acted with deliberate indifference. For these reasons, this Court grants Defendants' motion to dismiss the claims against the remaining Defendants.[3]

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss the Fifth Amended Complaint. Based upon the record, the deadline for any further amendments has now expired. This Court sets a status conference for April 23, 2020 at 9:45 a.m. in Courtroom 1203. Parties wishing to appear by telephone shall contact the Courtroom Deputy at least 24 hours prior to the hearing to arrange for a telephonic appearance.

Dated: March 23, 2020

Entered:

_____
John Robert Blakey
United States District Judge

---

[3] Plaintiff also includes several troubling allegations regarding an unidentified doctor who moved him from the Residential Treatment Unit, which houses inmates with serious medical conditions, and discontinued Plaintiff's heart medications. [45] ¶¶ 39–44. Plaintiff, however, failed to name this individual as a defendant.